UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

KENNETH TAYLOR, derivatively on behalf of FLAGSTAR BANCORP, INC.

Plaintiff,

v.

JOSEPH P. CAMPANELLI, MICHAEL J. TIERNEY, PAUL D. BORJA, TODD M. MCGOWAN, DANIEL LANDERS, MATTHEW A. KERIN, WALTER N. CARTER, GREGORY ENG, JAY J. HANSEN, DAVID J. MATLIN, JAMES A. OVENDEN, MARK PATTERSON, MICHAEL J. SHONKA and DAVID J. TREADWELL,

Defendants.

and

FLAGSTAR BANCORP, INC.,

Nominal Defendant.

Case No. 14-cv-10313
Judge Sean F. Cox
Magistrate Judge Michael Hluchaniuk

______________________________________/

**DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE TO STAY**

All Defendants, by undersigned counsel, move to dismiss Plaintiff Kenneth Taylor's Complaint, or, in the alternative, to stay all proceedings in this action pending entry of a final judgment in the parallel civil action filed by Taylor against the same Defendants in the Oakland County Circuit Court (*Taylor v. Campanelli* and *Rosenfeld v. Campanelli*, Oakland County Circuit Court Case No. 13-135711-CZ (consolidated)). The grounds and support for the motion are fully set forth in the supporting brief, which Defendants incorporate into this motion.

Defendants sought concurrence in the relief requested in this motion, and concurrence was denied.

Respectfully submitted by:

s/Thomas W. Cranmer
Thomas W. Cranmer (P25252)
Matthew F. Leitman (P48999)
Miller, Canfield, Paddock and Stone, P.L.C.
*Counsel for Defendant Flagstar Bancorp., Inc.*

s/William H. Horton (with consent)
William H. Horton (P31567)
Giarmarco, Mullins & Horton, P.C.
*Counsel for Defendants James A. Ovenden and Michael J. Shonka*

s/Eric J. Pelton (with consent)
Eric J. Pelton (P40635)
Kienbaum, Opperwall, Hardy & Pelton, P.LC.
—and—
Jonathan C. Dickey
Robert F. Serio
Gibson, Dunn & Crutcher LLP
*Counsel for Defendants Joseph P. Campanelli, Michael J. Tierney, Paul D. Borja, Todd M. McGowan, Daniel Landers, Matthew A. Kerin, Walter N. Carter, Gregory Eng, Jay J. Hansen, David J. Matlin, Mark Patterson and David J. Treadwell*

Dated: February 12, 2014

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

KENNETH TAYLOR, derivatively on behalf of FLAGSTAR BANCORP, INC.

Plaintiff,

v.

JOSEPH P. CAMPANELLI, MICHAEL J. TIERNEY, PAUL D. BORJA, TODD M. MCGOWAN, DANIEL LANDERS, MATTHEW A. KERIN, WALTER N. CARTER, GREGORY ENG, JAY J. HANSEN, DAVID J. MATLIN, JAMES A. OVENDEN, MARK PATTERSON, MICHAEL J. SHONKA and DAVID J. TREADWELL,

Defendants.

and

FLAGSTAR BANCORP, INC.,

Nominal Defendant.

Case No. 14-cv-10313
Judge Sean F. Cox
Magistrate Judge Michael Hluchaniuk

______________________________________________/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE TO STAY**

# TABLE OF CONTENTS

Index of Authorities .......... iii

Questions Presented .......... v

Introduction .......... 1

Background .......... 2

I. Taylor's State Court Action .......... 2

II. Rosenfeld's State Court Action .......... 4

III. The State Court Consolidated the Taylor State Court Action and the Rosenfeld State Court Action and Appointed Rosenfeld and His Lawyers as Lead Plaintiff and Lead Counsel, Respectively .......... 5

IV. Rosenfeld Filed a Consolidated Amended Complaint in the State Court Action Containing the Same Allegations and Same Claims That Taylor Asserted in His State Court Complaint .......... 7

V. Taylor's Complaint In This Action Mirrors the Relevant Portions of the State Court CAC .......... 8

Argument .......... 12

I. This Court Should Abstain From Adjudicating This Duplicative Action Under the *Colorado River* Doctrine .......... 12

A. This Action and the State Court CAC Are Parallel Proceedings and Therefore This Court Has the Authority to Abstain From Adjudicating This Action 12

B. The Relevant *Colorado River* Factors Weigh Heavily in Favor of Abstaining From Adjudicating This Action 14

C. Dismissal, Rather Than a Stay, Is the Appropriate Remedy Under the Circumstances Presented Here 20

II. In the Alternative, This Court Should Exercise Its Inherent Authority to Stay This Action ....................22

Conclusion ....................25

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*American International Underwriters (Philippines), Inc. v. Continental Insurance Company*,
843 F.2d 1253 (9th Cir. 1998) .....21

*Ash v. Alexander*,
2000 WL 20704 (S.D.N.Y. Jan 12, 2000) .....14, 20

*Bates v. Van Buren Township*,
122 Fed. Appx. 803 (6th Cir. 2004).....20

*Beck v. CKD Phara Holdings, S.A.*,
999 F. Supp. 652 (D. Md. 1998).....13, 20

*Bushansky v. Armacost*,
2012 WL 3276937 (N.D. Cal 2012) .....20

*Clark v. Lacy*,
376 F.3d 682 (7th Cir. 2004) .....13, 19, 20, 24

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976).....*passim*

*Day v. Union Mines, Inc.*,
862 F.2d 652 (7th Cir. 1988) .....16

*Gray v. Saltalamaccia*,
2011 WL 4737602 (E.D. Mich. 2011).....22

*Healthcare Capital, LLC v. HealtMed, Inc.*,
213 F.Supp.2d 850 (S.D. Ohio 2002) .....21

*Highland Apartments, L.L.C. v. Golden*,
2009 WL 1704669 (E.D. Mich. 2009).....18

*Horn v. Raines*,
227 F.R.D. 1 (D.D.C. 2005).....24

*Hunter v. Doe*,
61 Mich. App. 465 (1975) .....15

*Landis v. North American Co.*,
299 U.S. 248 (1936)....................................................................2, 22, 23

*Michael v. Ghee*,
325 F.Supp.2d 829 (N.D. Ohio 2004) ..............................................................23

*Nathan v. Rowen*,
651 F.2d 1223 (6th Cir. 1981) ..........................................................................23

*Preston v. Eriksen*,
106 F.3d 401 (6th Cir. 1997), 1997 WL 14418............................................14, 18

*Romine v. Compuserve Corp.*,
160 F.3d 337 (6th Cir. 1998) .......................................................................*passim*

*Rosenbuaer America, LLC v. Advantech Service & Parts, LLC*,
437 F.Supp.2d 1081 (D.S.D. 2006) ....................................................................23

*Shallal v. Elson*,
1999 WL 33957906 (S.D. Fla. Apr. 12, 1999)...................................................24

*Smith v. Waste Management, Inc.*,
407 F.3d 381 (5th Cir. 2005) ..........................................................................23

*Travelers Property Casualty Company of America v. Associated Engineers, Inc.*,
2013 WL 6230613 (W.D. Ky. Dec. 2, 2013) .....................................................22

**Statutes**

Mich. Comp. Laws 450.1495.........................................................................16

**Court Rules**

MCR 2.117(C)(2)..............................................................................................6

## QUESTIONS PRESENTED

I. Under the *Colorado River* doctrine, a federal court may abstain from adjudicating a civil action where a parallel action is pending in state court. Here, Plaintiff Kenneth Taylor filed the instant shareholder derivative action in this Court even though he filed the identical action in a Michigan state court; even though the claims he brought in the state court remain pending there (another lead plaintiff having been selected to prosecute the claims in a consolidated action); even though the state court is more than capable of fairly adjudicating those claims (which all arise under Michigan law); and even though proceeding in this Court will result in costly and duplicative litigation of the claims and will harm Nominal Defendant Flagstar Bancorp., Inc., the party on whose behalf Taylor purports to be suing. Taylor re-filed his claims here only after receiving an unfavorable ruling from the state court, rejecting his attempt to be appointed lead plaintiff in favor of a competing plaintiff and plaintiff's law firm. Under these circumstances, should the Court dismiss (or, at a minimum, stay) this action under the *Colorado River* doctrine?

Defendants say: YES

II. In the alternative, should this Court exercise its inherent powers, as recognized in *Landis v. North American Co*., 299 U.S. 248 (1936), to stay this duplicative action in the interest of judicial efficiency and sound docket management?

Defendants say: YES

# INTRODUCTION

Plaintiff Kenneth Taylor's shareholder derivative action against current and former officers and directors of Flagstar Bancorp, Inc. ("Flagstar" or the "Bank") should be dismissed (or at least stayed) because it is duplicative of the very same action that he previously filed and that remains pending in state court.

Taylor first filed a shareholder derivative action in the Oakland County Circuit Court five months ago (hereafter, the "State Court action"). Another Flagstar shareholder, Joel Rosenfeld, filed a substantially similar derivative suit in the same court at about that same time. Over Taylor's objections, the state court consolidated the two actions, concluded that Rosenfeld and his attorneys would represent the Bank and its shareholders more effectively than Taylor and his attorneys, and appointed Rosenfeld and his attorneys as lead plaintiff and lead counsel, respectively, in the consolidated action. (*See* State Court Order, attached as Ex. A.) Taylor apparently does not like that ruling, so he filed this duplicative action in which he re-asserts the exact same factual allegations and exact same claims pending before the state court in the consolidated action.

Taylor's forum shopping and assertion of duplicative claims is improper. As a derivative plaintiff, Taylor purports to sue on Flagstar's behalf, but it is decidedly *against* Flagstar's interest to be embroiled in two identical lawsuits in two courts at the same time. Indeed, it would be an undue burden and expense on Flagstar, and

an obvious waste of judicial resources, to allow Taylor to litigate in this Court the very same state-law claims that Rosenfeld is already pursuing on behalf of the Bank in the State Court action.

Given the undisputed fact that this action is entirely duplicative of the already-pending State Court action, and the clear forum-shopping in which Taylor has engaged, the Court should abstain from adjudicating this case under the *Colorado River* doctrine. That doctrine – which "rest[s] on considerations of wise judicial administration" – allows a federal court to dismiss or stay a civil action due to the pendency of a parallel state action. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Alternatively, this Court should stay this action under its inherent power to control its own docket. *See Landis v. North American Co*., 299 U.S. 248 (1936). "Wise judicial administration" plainly compels dismissal (or, at the absolute minimum, a stay) of this duplicative, parallel, and wasteful action.

## BACKGROUND

### I. TAYLOR'S STATE COURT ACTION

Taylor claims to be a Flagstar shareholder. On August 15, 2013, he filed a shareholder derivative action in the Oakland County Circuit Court against fourteen current and former officers of Flagstar ("Taylor's State Court Action"). (A copy of the Complaint in Taylor's State Court Action is attached as Ex. B.) Taylor's State

Court Action arose out of a settlement between Flagstar and the United States Department of Justice (the "DOJ Settlement"). (*See* Taylor's State Court Complaint, attached as Ex. B, at ¶¶5-9.) The DOJ Settlement resolved claims by the government that Flagstar had engaged in certain improper lending practices in connection with loans that were insured by the Federal Housing Administration. (*Id.* at ¶¶4-5.) Based on the publicly-announced DOJ Settlement, Taylor alleged that the officer and director defendants "caused" Flagstar "to engage in fraudulent lending practices" that led the Bank to incur the substantial liability underlying the settlement. (*Id*. at ¶4.)

Taylor asserted six state-law claims against all of the defendants: (1) breach of fiduciary duty for disseminating false information; (2) breach of fiduciary duty for failing to maintain adequate internal controls; (3) breach of fiduciary duty for failing to properly manage and oversee the company; (4) unjust enrichment; (5) abuse of control; and (6) gross mismanagement. In his prayer for relief, Taylor demanded damages and restitution in favor of the Bank, an order directing the Bank to reform its governance and control practices, and costs and attorney's fees. Taylor's action was assigned to the Business Court division of the Oakland County Circuit Court.

## II. ROSENFELD'S STATE COURT ACTION

Shortly after Taylor filed his action, on October 23, 2013, Rosenfeld, another alleged Flagstar shareholder, filed a second derivative action against the same defendants named in Taylor's action ("Rosenfeld's State Court Action"). (A copy of the Complaint in Rosenfeld's State Court Action is attached as Ex. C.) Like Taylor, Rosenfeld claimed that the defendants were responsible for the allegedly-improper lending practices that caused Flagstar to enter into the settlement with the Department of Justice. (*See* Rosenfeld's State Court Complaint, attached as Ex. C, at ¶67.) In fact, Rosenfeld's Complaint is broader than Taylor's complaint, in that it includes allegations related to Flagstar's trial loss to Assured Guarantee Municipal Corporation. Rosenfeld asserted the same six state-law causes of action that Taylor asserted. (*See id*. at Counts I-VI.) Notably, Rosenfeld's complaint also recounted the significant ongoing efforts in which Rosenfeld and his counsel have undertaken to discuss the claims-in-dispute with counsel for the Special Committee of the Board of Directors of Flagstar that has been investigating the conduct challenged in both complaints. (*See id* at ¶¶4-6.) A report from the Special Committee is due to be issued shortly.

Rosenfeld's action was assigned to the Business Court division of the Oakland County Circuit Court.

## III. THE STATE COURT CONSOLIDATED THE TAYLOR STATE COURT ACTION AND THE ROSENFELD STATE COURT ACTION AND APPOINTED ROSENFELD AND HIS LAWYERS AS LEAD PLAINTIFF AND LEAD COUNSEL, RESPECTIVELY

On November 4, 2013, Rosenfeld filed a motion to consolidate the two derivative actions, to be appointed as lead plaintiff, and to have his counsel appointed as lead plaintiff's counsel. Rosenfeld argued, among other things, that the actions should be consolidated because they shared substantial and controlling questions of fact and law relating to the DOJ Settlement, and he argued that he and his counsel were best suited to take the lead in a consolidated action because they had been working with the Special Litigation Committee appointed by Flagstar's Board of Directors to investigate the allegations related to the DOJ Settlement. (*See* 11/20/2013 Hearing Tr., attached as Ex. D, at 10-19.) Taylor opposed consolidation and opposed Rosenfeld's request to be appointed lead counsel. (*See id*. at 19-25.)

By written Opinion and Order dated November 27, 2013, the state court consolidated the actions and appointed Rosenfeld and his attorneys as lead plaintiff and lead counsel, respectively. (*See* State Court Order at Ex. A.) With respect to consolidation, the court noted that "the Rosenfeld Complaint makes all of the same allegations as the Taylor Complaint" and concluded that "it would be nonsensical to allow the actions to proceed separately." (*Id*. at 2.) With respect to leadership of the consolidated action, the state court concluded that Rosenfeld and his

attorneys were more committed, and better qualified, to represent the interests of Flagstar and its shareholders:

> The Court also notes that Mr. Rosenfeld actively engaged with the Board's Special Committee – formed to investigate and consider what course of action was in Flagstar's best interest. Mr. Taylor, however, ignored the Special Committee's invitation to meet. This fact, coupled with the [sic] Mr. Rosenfeld's more comprehensive Complaint, weigh in Mr. Rosenfeld's favor. Mr. Rosenfeld appears to be more willing to facilitate a resolution short of trial. Moreover, Mr. Rosenfeld's counsel (both local and lead) have established themselves as exceptional and highly qualified to serve as lead counsel in this matter.

(*Id.* at 4.)

Following this ruling, Taylor and his counsel filed with the state court a document entitled "Notice of Kenneth Taylor's Withdrawal as Plaintiff, and Notice of the Withdrawal of Appearance as Counsel of the Weiser Law Firm, P.C., Ryan and Maniskas, LLC, and Anthony Deluca, PLC." (A copy of the "Notice" is attached as Ex. E.) The Notice did not cite any Michigan Court Rule as authority for the purported "withdrawal" of Taylor and his attorneys, nor did the Notice acknowledge MCR 2.117(C)(2), which provides that an attorney may withdraw an appearance "only on order of the court." The state court's order dated November 27, 2013 consolidated the actions and appointed Rosenfeld's attorneys as *lead* (not sole) counsel; the order neither dismissed Taylor's claims nor terminated the appearances of Taylor's attorneys in the State Court action.

## IV. ROSENFELD FILED A CONSOLIDATED AMENDED COMPLAINT IN THE STATE COURT ACTION CONTAINING THE SAME ALLEGATIONS AND SAME CLAIMS THAT TAYLOR ASSERTED IN HIS STATE COURT COMPLAINT

On December 23, 2013, Rosenfeld filed a Consolidated Amended Complaint in the state court (the "State Court CAC"). (A copy of the State Court CAC is attached as Ex. F.) The State Court CAC alleges that the Defendants committed misconduct that caused Flagstar to incur the liability underlying the DOJ Settlement. (*See* State Court CAC, Ex. F, at ¶2.) The State Court CAC also incorporates and re-asserts the very same factual allegations and same six state law causes of action asserted in Taylor's State Court Complaint. *Compare* Counts I-VI of Taylor's State Court Complaint, Ex. B, *with* Counts I-VI of the State Court CAC, Ex. F; *and compare* the allegations in paragraphs 33-38 and 40-53 of Taylor's State Court Complaint *with* the allegations in paragraphs 25-30 and 58-73 of the State Court CAC.

The State Court CAC seeks as relief, among other things (1) damages in favor of Flagstar "as a result of Defendants' breaches of statutory and common law fiduciary duties," (2) an order requiring Flagstar to perform "necessary actions to reform and improve its corporate governance and internal control practices and procedures … including, but not limited to, amending Flagstar's By-Laws or Articles of Incorporation"; (3) "restitution from Defendants" and "disgorgement of

all profits, benefits, and other compensation obtained by the Defendants," and (4) attorneys' fees and costs.

On January 14, 2014, Judge James M. Alexander approved the parties' request to engage in a facilitation, currently scheduled for March 4, 2014.

## V. TAYLOR'S COMPLAINT IN THIS ACTION MIRRORS THE RELEVANT PORTIONS OF THE STATE COURT CAC

On January 24, 2014, Taylor filed the instant shareholder derivative action ("Taylor's Federal Court Action"). His Complaint here closely tracks the now-pending State Court CAC. (Taylor's Federal Court Complaint is attached as Ex. G.) It names the same defendants, it asserts the same six state-law causes of action (*see* Ex. G at Counts I-VI), and it contains the same core factual allegations concerning the DOJ Settlement. The overlap between Taylor's Federal Court Action here and the State Court CAC includes the following:

| | **STATE COURT CONSOLIDATED COMPLAINT** | **FEDERAL COURT COMPLAINT** |
|---|---|---|
| **DEFENDANTS' ALLEGED DUTIES** | Defendants "owed Flagstar and its shareholders fiduciary obligations of good faith, loyalty, and diligence, and were and are required to use their utmost ability to control and manage Flagstar in a fair, just, honest, and equitable manner…" ¶ 25. | Defendants "owed Flagstar and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Flagstar in a fair, just, honest, and equitable manner." ¶ 35. |

| | | |
|---|---|---|
| **DEFENDANTS' ALLEGED DUTIES** | "Defendants, because of their positions of control and authority as directors and/or officers of Flagstar were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein." ¶ 26. | "Defendants, because of their positions of control and authority as directors and/or officers of Flagstar were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein." ¶ 36. |
| **DEFENDANTS' ALLEGED DUTIES** | "To discharge their duties, the officers and directors of Flagstar were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company." ¶ 27 | "To discharge their duties, the officers and directors of Flagstar were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company." ¶ 37 |
| **ALLEGEDLY MISLEADING PUBLIC STATEMENTS** | • April 26, 2011 Press Release; ¶ 58<br>• May 9, 2011 Form 10-Q; ¶ 59<br>• July 26, 2011 Press Release; ¶60<br>• August 8, 2011 Form 10-Q; ¶ 61<br>• Oct. 25, 2011 Press Release; ¶ 62<br>• November 9, 2011 Form 10-Q; ¶ 63<br>• January 24, 2012 Press Release; ¶ 64 | • April 26, 2011 Press Release; ¶ 42<br>• May 9, 2011 Form 10-Q; ¶ 43<br>• July 26, 2011 Press Release; ¶ 44<br>• August 8, 2011 Form 10-Q; ¶ 45<br>• Oct. 25, 2011 Press Release; ¶ 46<br>• November 9, 2011 Form 10-Q; ¶ 47<br>• January 24, 2012 Press Release; ¶ 48 |

| | | |
|---|---|---|
| **ALLEGATIONS RELATED TO DOJ ACTION** | • As part of the DOJ "settlement, Flagstar expressly admitted, acknowledged, and accepted responsibility for submitting false certifications to HUD. The false certifications induced the [FHA] to accept ineligible loans for governing insurance …" ¶ 34<br>• "On February 24, 2012, Defendants issued a press release entitled "Flagstar Enters into Agreement with Department of Justice." Among other things, the press release revealed that the Company could be liable for payments of up to $118 million." ¶ 50.<br>• "Three days later, on February 26, 2012, Defendants issued a press release entitled "Flagstar Issues Revised 2011 Results Based on Completed Analysis." Therein, Defendants revealed that the Company's fourth quarter and full year 2011 loss would increase by $29.1 million." ¶ 51. | • As part of the DOJ "Settlement, the defendants caused [Flagstar] to admit, acknowledge, and accept responsibility for submitting false certifications to HUD that induced the FHA to accept the loans for government insurance." ¶ 5.<br>• "On February 24, 2012, Defendants issued a press release entitled "Flagstar Enters into Agreement with Department of Justice." Among other things, the press release revealed that the Company could be liable for payments of up to $118 million." ¶ 67.<br>• "Three days later, on February 26, 2012, Defendants issued a press release entitled "Flagstar Issues Revised 2011 Results Based on Completed Analysis." Therein, Defendants revealed that the Company's fourth quarter and full year 2011 loss would increase by $29.1 million." ¶ 68. |

| | | |
|---|---|---|
| **ALLEGATIONS RELATED TO DOJ ACTION** | • "On March 20, 2012, Defendants issued a press release …. Therein, Defendants revealed that the Company's fourth quarter and full year 2011 net loss would actually increase by $33.3 million, as opposed to the increase of $29.1 million that Defendants had announced previously. This meant that the Company's full year 2011 net loss was a staggering $198.9 million." ¶ 53.<br>• "On October 23, 2013, Defendants announced that they had caused Flagstar to enter into a consent order with the OCC." ¶ 55. | • "On March 20, 2012, Defendants issued a press release …. Therein, Defendants revealed that the Company's fourth quarter and full year 2011 net loss would actually increase by $33.3 million, as opposed to the increase of $29.1 million that Defendants had announced previously. This meant that the Company's full year 2011 net loss was a staggering $198.9 million." ¶ 70.<br>• "On October 23, 2013, Defendants announced that they had caused Flagstar to enter into a consent order with the OCC." ¶ 73. |

Matching the relief sought in the State Court CAC nearly verbatim, Taylor's Federal Court Complaint seeks as relief, among other things, (1) damages sustained by Flagstar "as a result of Defendants' breaches of fiduciary duties," (2) an order requiring Flagstar to perform "necessary actions to reform and improve its corporate governance and internal procedures … including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation"; (3) "restitution from Defendants" and

"disgorgement of all profits, benefits, and other compensation obtained by the Defendants," and (4) attorneys' fees and costs.

## ARGUMENT

### I. THIS COURT SHOULD ABSTAIN FROM ADJUDICATING THIS DUPLICATIVE ACTION UNDER THE *COLORADO RIVER* DOCTRINE

#### A. This Action and the State Court CAC Are Parallel Proceedings and Therefore This Court Has the Authority to Abstain From Adjudicating This Action

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), "the Supreme Court noted that despite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colorado River*, 424 U.S. at 817) (attached as Ex. H). This doctrine "rest[s] on considerations of wise judicial administration, giving due regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817.

Under *Colorado River*, a federal court may stay or dismiss an action that is "actually parallel" to a concurrent state court action. *Romine*, 160 F.3d at 339-340. "Exact parallelism is not required; it is enough if the two proceedings are

substantially similar." *Id.* (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Actions are "parallel for the purposes of the *Colorado River* doctrine" where the parties are "substantially similar" and the claims are "predicated on the same allegations." *Romine*, 160 F.3d at 340.

Taylor's Federal Court Complaint more than satisfies the parallelism requirement. As demonstrated above, Taylor's Complaint makes the same core factual allegations and asserts the same causes of action as the State Court CAC. Indeed, the two complaints are more than "substantially similar;" in relevant part, they are virtually identical. Moreover, all of the relief that Taylor seeks here is also requested in the State Court CAC. (*See, e.g.*, pp. 7-10, *supra*.) Befitting the parallel nature of these two competing actions, Taylor and his counsel actively competed to be appointed "lead plaintiff" in the State Court action, before Taylor abandoned the state court forum in order to pursue his duplicative federal court action. Thus, this action and the State Court action are parallel, and this Court has the authority under *Colorado River* to abstain from adjudicating this action.[1]

---

[1] Numerous federal courts have held that shareholder derivative actions like this one and the one pending in state court are parallel for Colorado River purposes. *See, e.g.*, *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (federal and state court derivative actions were "parallel … when substantially the same parties are contemporaneously litigating substantially the same issues in another forum"); *Beck v. CKD Phara Holdings, S.A.*, 999 F. Supp. 652, 656 (D. Md. 1998) (derivative actions were parallel because, among other reasons, "[t]he Defendants in each suit are substantially the same [and Electronic Transport of America, Inc.]

*Continued on next page.*

### B. The Relevant *Colorado River* Factors Weigh Heavily in Favor of Abstaining From Adjudicating This Action

"In *Colorado River*, the Court declared that, in deciding whether to defer to the concurrent jurisdiction of a state court, a district court must consider such factors as (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained." *Romine*, 160 F.3d at 340-41, citing *Colorado River*, 424 U.S. at 818-19. "In subsequent cases, the Supreme Court has identified at least four additional factors to be weighed in the balance," including "(5) whether the source of the governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction…." *Id.* at 341-42 (citations omitted). The Sixth Circuit has identified one more relevant factor: forum shopping. In its words, "clearly, forum-shopping can in some cases justify *Colorado River* abstention." *Preston v. Eriksen*, 106 F.3d 401 (6th Cir. 1997) (TABLE), 1997 WL 14418, *4, n. 3 (attached as Ex. I), quoting *Fireman's Fund Ins. Co. v. Quakenbush*, 87 F.3d 290, 297 (9th Cir. 1996). A careful

---

*Continued from previous page.*

is named in a derivative capacity in both suits…"); *Ash v. Alexander*, 2000 WL 20704 at *2 (S.D.N.Y. Jan 12, 2000) (federal shareholder derivative action was parallel to state court derivative action where the federal complaint "rais[ed] the same issues that [are] presently pending in state court").

balancing of these factors in this case compels conclusion that Taylor's duplicative claims must be dismissed.

The first factor – jurisdiction over property – is "inapposite to the instant matter because no property is at issue." *Romine*, 160 F.3d at 341. Thus, this factor does not favor abstention.

The second factor – forum convenience – weighs in favor of abstention (albeit not overwhelmingly). Flagstar and its lead counsel (Thomas Cranmer, Esq.) are located in Oakland County; counsel for Defendants Shonka and Ovenden (William Horton, Esq.) is located in Oakland County; Michigan counsel for all of the other individual defendants (Eric Pelton, Esq.) is located in Oakland County; and Taylor's Michigan counsel in this action is likewise located in Oakland County. Thus, the Oakland County Circuit Court in Pontiac is more convenient than this Court, located in Detroit. *See Hunter v. Doe*, 61 Mich. App. 465 (1975) (recognizing that Oakland County Circuit Court is more convenient forum for Oakland County residents than a court in the City of Detroit). And litigating in Oakland County would be no more inconvenient to Taylor than this federal forum, because he is from Wyoming. (Taylor's Federal Court Complaint, <u>Ex. G</u>, at ¶17.)

The third and "paramount" factor – avoiding piecemeal litigation – weighs strongly in favor of abstention. *Romine*, 160 F.3d at 341. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating

judicial effort and potentially rendering conflicting results." *Id.* Allowing this action to proceed simultaneously with the pending State Court action would create quintessential piecemeal litigation. This Court and the Oakland County Circuit would both be considering virtually identical dispositive issues of fact and law, including but not limited to, (i) whether Flagstar is entitled to dismissal of the derivative claims based on the anticipated report of the Special Litigation Committee that has investigated those claims, *see* Mich. Comp. Laws 450.1495; (ii) whether the individual defendants breached any fiduciary duties based on the conduct alleged in Taylor's Complaint here and in the State Court CAC; and (iii) whether any alleged breaches of those duties caused harm to Flagstar, as alleged here and in the State Court CAC. A dismissal is essential in order to avoid piecemeal adjudication of these key issues.

The fourth factor – the order in which jurisdiction was obtained – also weighs in favor of abstention. The Oakland County Circuit Court acquired jurisdiction over Taylor's derivative claims five months ago, in August 2013. The claims were not filed in this Court until January 24, 2014.

The fifth factor – governing law – weighs heavily in favor of abstention. All of Taylor's claims here arise under Michigan law, and "a state court's expertise in applying its own law favors a *Colorado River* stay." *Day v. Union Mines, Inc.*, 862 F.2d 652, 660 (7th Cir. 1988). This is not a case in which "the presence of

federal law issues … weigh[s] against surrender of federal jurisdiction in deference to state proceedings." *Romine*, 160 F.3d. at 342, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).

The sixth factor – adequacy of the state forum – also weighs heavily in favor of abstention. Indeed, Taylor's own actions leave no doubt that state court is more than an adequate forum in which to adjudicate his claims arising under Michigan corporate law common law: He chose that forum initially even though he had an option to file in this Court at that time. Moreover, the Business Court to which the State Court action is assigned has specialized procedures that render it particularly well-suited to provide timely and adequate relief, if appropriate. *See e.g.*, "The New Michigan Business Court Legislation: Twelve Years in the Making," Douglas L. Toering, American Bar Association Business Law Today, January 2013, 2013-JAN Bus. L. Today 1.

The seventh factor – relative progress of the two actions – weighs in favor of abstention (albeit not overwhelmingly). This action was just filed. In contrast, in the State Court action, the state court has already ruled on a motion for consolidation and selected both a lead plaintiff and lead counsel. In addition, the parties in the State Court action have begun the facilitation process. They have selected a facilitator, scheduled a facilitation, exchanged documents to be

evaluated in advance of facilitation, and begun preparing to explore settlement during the facilitation.

The eighth factor – the presence or absence of concurrent jurisdiction – weighs in favor of abstention because "both courts have concurrent jurisdiction." *Highland Apartments, L.L.C. v. Golden*, 2009 WL 1704669 at *3 (E.D. Mich. 2009) (Cox, J.).

The final factor – discouraging forum shopping – weighs very heavily in favor of abstention. Taylor had no legitimate reason to re-file in this Court derivative claims that he had already filed in state court and that still remain pending there despite his flawed attempt to "withdraw." He filed here only after obtaining a result he disliked in state court – losing out on his bid to become lead plaintiff. That is naked forum shopping and, in the Sixth Circuit's words, is "clearly" a basis on which to defer to the state court proceedings under *Colorado River*. *Preston*, 1997 WL 14418 at * 4, n. 3. The Sixth Circuit has stressed that "gamesmanship" like that practiced by Taylor here is a threat to the integrity of the judicial system that should be addressed by *Colorado River* abstention.

> When a case proceeds on parallel tracks in state and federal court, the threat to the efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Romine*, 160 F.3d at 341, quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985).

When considered as a whole, the factors above weigh overwhelmingly in favor of abstaining from adjudicating Taylor's duplicative action under *Colorado River*. Indeed, numerous federal courts have deferred to state shareholder derivative proceedings under similar circumstances. The Seventh Circuit's decision in *Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004) (attached as Ex. J), is particularly instructive. In *Clark*, a shareholder filed a derivative action asserting state-law breach of fiduciary duty claims in a New York state court, and three weeks later, a different shareholder filed a derivative action in federal court asserting claims premised on alleged breaches of the same duties. The Seventh Circuit affirmed the district court's decision to abstain under *Colorado River* and explained that abstention as the proper course of action to avoid piecemeal litigation:

> The district court found that a stay would eliminate piecemeal and duplicative litigation. We agree that this factor weighs in favor of a stay. As explained above, the claims in Clark and Brewster are all predicated on the same showing of a breach of fiduciary duty. Without staying the federal proceeding, the two actions would proceed simultaneously-duplicating the amount of judicial resources required to reach a resolution. If Brewster is reinstated, the two courts would oversee similar pre-trial motions and discovery matters and two different triers of fact would be asked to consider the same issues, evidence and witnesses. Our Court has held that this sort of redundancy counsels in favor of a stay. *See Caminiti*, 962 F.2d at 701

> (concluding that where the same issues must be resolved in two cases, a stay would prevent duplicative and wasteful litigation). Not only would a stay save judicial resources, but it would also protect against the danger of the two proceedings reaching inconsistent results, especially in light of the recent dismissal of Brewster by the New York Supreme Court.

*Clark*, 376 F.3d at 687-88. *See also, e.g., Bushansky v. Armacost*, 2012 WL 3276937 (N.D. Cal 2012) (staying shareholder derivative action in favor of state court class action that contained essentially identical claims and allegations); *Ash v. Alexander*, 2000 WL 20704 at **2-5 (S.D.N.Y. 2000) (*Colorado River* dismissal of shareholder derivative action warranted where a "consolidated derivative action raising the same issues [was] presently pending in state court"); *Beck v. CKD Phara Holding, A.S.*, 999 F. Supp. 652 (1998) (D. Md.) (same). These decisions are well-reasoned and consistent with Sixth Circuit precedent, and this Court should follow them in concluding that deference to the pending State Court action makes sense in these circumstances.

### C. Dismissal, Rather Than a Stay, Is the Appropriate Remedy Under the Circumstances Presented Here

In most cases in which *Colorado River* abstention is appropriate, courts generally issue a stay of proceedings rather than dismissing a plaintiff's case outright. *See, e.g., Bates v. Van Buren Township*, 122 Fed. Appx. 803, 809 (6th Cir. 2004) (unpublished). However, this Court has the discretion to dismiss under

*Colorado River*. Indeed, that decision itself recognizes the power to dismiss. *Colorado River*, 424 U.S. at 818.

Here, the Court is presented with an obvious case of forum shopping that tips the scales in favor of outright dismissal. Courts have highlighted similar forum shopping as an important factor justifying dismissal. *See, e.g., Healthcare Capital, LLC v. HealtMed, Inc.*, 213 F.Supp.2d 850, 859 (S.D. Ohio 2002) (dismissing action pursuant to *Colorado River* and observing that allowing the plaintiff to proceed "would be to encourage parties to engage in forum shopping by continuing to file substantially similar litigation under various guises until they receive the quickest and most desirable ruling. This Court cannot fathom such a result"); *American International Underwriters, (Philippines), Inc. v. Continental Insurance Company*, 843 F.2d 1253, 1261 (9th Cir. 1998) (dismissing under *Colorado River* where, among other things, plaintiff engaged in forum shopping). As the Sixth Circuit made clear in *Romine*, the type of forum shopping in which Taylor has engaged here presents a grave threat to the public's perception of the judicial system and the ability of the system to deliver fair and consistent results. The appropriate judicial response to Taylor's conduct is dismissal.

Dismissal rather than a stay is also appropriate because the resolution of the State Court action – which encompasses all of the allegations and claims in this action – will unequivocally dispose of the very same claims at issue here, and be

entitled to collateral estoppel effect in this Court. *See Travelers Property Casualty Company of America v. Associated Engineers, Inc.*, 2013 WL 6230613 at *4 (W.D. Ky. Dec. 2, 2013) (despite recognition "that when abstention is appropriate under the *Colorado River* doctrine, the general course of action is to stay the proceeding," federal district court nevertheless determined that "in the present case, dismissal is appropriate" because "[o]nce the state court action is complete, there will be no remaining issues in the federal action").

## II. IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO STAY THIS ACTION

If this Court concludes that abstention under *Colorado River* is not warranted, it should exercise its inherent authority to stay this action. The Supreme Court recognized that authority in *Landis v. North American Co.*, 299 U.S. 248 (1936). In *Landis*, the Supreme Court explained that:

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* at 254-55.

Importantly, a federal court may exercise its inherent authority to stay a civil action pending resolution of a state court action even where abstention under *Colorado River* is not warranted. That is exactly what this Court did in *Gray v.*

*Saltalamaccia*, 2011 WL 4737602 (E.D. Mich. 2011) (Lawson, J.). Simply put, "[t]he inapplicability of abstention doctrines does not preclude a stay." *Rosenbuaer America, LLC v. Advantech Service & Parts, LLC*, 437 F.Supp.2d 1081, 1084 (D.S.D. 2006) (exercising inherent authority to stay action under *Landis* even though *Colorado River* abstention not appropriate).

In determining whether to stay this action pursuant to *Landis*, this Court should consider "the potentiality of [the state action] having a dispositive effect on [this action], the judicial economy to be saved by waiting on a dispositive decision, the public welfare, and the hardship/prejudice to the party opposing the stay." *Michael v. Ghee*, 325 F.Supp.2d 829, 831 (N.D. Ohio 2004). All of those factors weigh strongly in favor of a stay.

First, because the core factual allegations and causes of action in the State Court action are identical to those in this action, there is a certainty that the judgment in the state action would have a dispositive effect here. *See, e.g., Nathan v. Rowen*, 651 F.2d 1223 (6th Cir. 1981) (affirming dismissal of shareholder derivative claim as barred by the *res judicata* effect of judgment in prior shareholder derivative action against the same company and directors); *Smith v. Waste Management, Inc.*, 407 F.3d 381, 386 (5th Cir. 2005) (dismissing shareholder's derivative claims because they were barred by the *res judicata* effect of judgment in an earlier derivative suit covering same allegations of wrongdoing).

Second, for the reasons described above, staying this case will avoid undue burden and expense to Flagstar, and save judicial resources, by avoiding litigation of the very same legal and factual disputes that the state court is already addressing.

Third, a stay will not prejudice Taylor at all. Once again, because this is a derivative action, Taylor is not suing on his own behalf, and he is not the real party in interest. *Clark*, 376 F.3d at 686. Flagstar is. *Id*. And it is the lack of a stay, not the issuance of a stay, that would prejudice Flagstar. Indeed, absent a stay, Flagstar would be required to devote substantial resources to litigating identical actions in different courts. *See, e.g.*, *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (internal quotation omitted) ("The cost of defending … multiple actions may well do serious harm to the very corporation in whose interest they are supposedly brought"); *Shallal v. Elson*, 1999 WL 33957906 at *4 (S.D. Fla. Apr. 12, 1999) ("[I]n the derivative context … the corporation pays the fees to defend the action, to indemnify the individual defendants, and often also the fees for the plaintiff shareholders … The multiplicity of litigating actions that are undisputedly exactly the same multiplies the expense to the corporation, in time, money, and resources").

Finally, the public interest would not be harmed in the least by a stay. The public has an interest in a prompt and fair resolution of the derivative claims

against the defendants, and even with a stay here, those claims will be efficiently and properly adjudicated in the state court proceedings.

In the apt words of the Oakland County Circuit Court, it would be "nonsensical" to allow this action to move forward at the same time the very same claims and allegations are being litigated in the state court. Therefore, this Court should exercise its inherent authority to stay this action if Defendants' motion to dismiss under *Colorado River* is denied.

## CONCLUSION

For all of the reasons stated above, the Court should dismiss or stay this wasteful, duplicative, and parallel proceeding.

Respectfully submitted by:

s/Thomas W. Cranmer
Thomas W. Cranmer (P25252)
Matthew F. Leitman (P48999)
*Counsel for Defendant Flagstar Bancorp., Inc.*

s/William H. Horton (with consent)
William H. Horton (P31567)
*Counsel for Defendants James A. Ovenden and Michael J. Shonka*

s/Eric J. Pelton (with consent)
Eric J. Pelton (P40635)

—and—

Jonathan C. Dickey
Robert F. Serio
*Counsel for Defendants Joseph P. Campanelli, Michael J. Tierney, Paul D. Borja, Todd M. McGowan, Daniel Landers, Matthew A. Kerin, Walter N. Carter, Gregory Eng, Jay J. Hansen, David J. Matlin, Mark Patterson and David J. Treadwell*

Dated: February 12, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2014, I electronically filed the foregoing document with the Clerk of the court using the ECF system which will send notification of such filing to the following:

- **Elizabeth A. Favaro:** efavaro@gmhlaw.com, mgram@gmhlaw.com
- **William H. Horton:** bhorton@gmhlaw.com, efavaro@gmhlaw.com, mgram@gmhlaw.com
- **Alyson L. Oliver:** notifications@oliverlg.com, aoliver@oliverlg.com
- **Eric J. Pelton:** epelton@kohp.com, mbeveridge@kohp.com
- **Nick Suciu , III:** nicksuciu@yahoo.com, nsuciu@oliverlg.com, notifications@oliverlg.com

and hereby certify that I have also mailed by United States Postal Service the foregoing document to the following non-ECF participants:

(No manual recipients)

s/Thomas W. Cranmer
Thomas W. Cranmer (P25252)
Matthew F. Leitman (P48999)
Miller, Canfield, Paddock and Stone, P.L.C.
840 West Long Lake Road, Suite 200
Troy, MI 48098-6358
(248) 267-3381
cranmer@millercanfield.com
leitman@millercanfield.com
*Counsel for Defendant Flagstar Bancorp., Inc.*